UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:20CR158 (VLB) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM TISDOL | : | September 3, 2021 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government submits this memorandum in aid of the sentencing of the defendant, William Tisdol, which is presently scheduled for September 9, 2021. On May 14, 2021, the defendant pled guilty (ECF No. 218) to Count One of a six-count indictment ("Indictment") (ECF No. 1), charging him with Conspiracy to Transport and Possess Stolen Property in violation of Title 18, United States Code, Section 371. The Government submits this memorandum in response to the Defendant's Memorandum in Aid of Sentencing filed on August 26, 2021 ("Defendant's Sentencing Memorandum") (ECF No. 342).

I. BACKGROUND

A. The Offense and Relevant Conduct

The basic and uncontested facts of this offense are summarized accurately at paragraphs 11–15 of the Presentence Report ("PSR") (ECF No. 309) and in the Stipulation of Offense Conduct found in the Plea Agreement in this case ("Plea Agreement"). The facts outlined in the PSR and the Plea Agreement describe a prolific commercial larceny scheme that spanned several states over the course of fourteen months and resulted in losses exceeding $100,000. After stealing the merchandise—primarily high-end clothing and fashion products—from retail stores across the Northeast, the defendant and his co-conspirators would keep it

1

for themselves, give it to friends, or sell it for profit. The Indictment was returned on September 15, 2020, and on September 21, the defendant was arrested while in custody at the MacDougall-Walker Correctional Institution.

## II. STATUTORY AND GUIDELINES EXPOSURE

### A. Statutory Exposure

Based on his plea of guilty to a violation of 18 U.S.C. § 371, the defendant faces a maximum term of imprisonment of five years, a maximum term of supervised release of three years, and a maximum fine of $250,000, as well as a special assessment of $100. *See* PSR ¶¶ 56, 59, 64, 65. Pursuant to 18 U.S.C. § 3663A, the defendant must provide restitution to the victims in this case. The apportioned amount attributable to the defendant is $4,453.56. *See* PSR ¶ 68.

### B. Guidelines for the Instant Offense

The parties agreed, pursuant to the Plea Agreement dated May 14, 2021, on the following Guidelines Stipulation: that the defendant's base offense level under U.S.S.G. § 2B1.1 is 6, with two levels added under U.S.S.G. § 2B1.1(b)(1)(B) for a loss amount greater than $6,500 but less than $15,000, and two levels subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 6. Based on an initial assessment, the parties agreed that the defendant fell within Criminal History Category I. Accordingly, the parties agreed that the defendant faced a Guidelines range of 0 to 6 months of imprisonment, a supervised release term of at least one year but not more than three years, and a fine of $1,000 to $9,500. Plea Agreement at 4-5.

The base level of 6 specified in the Plea Agreement was based on the

defendant's participation in a conspiracy to possess and transport stolen property. *See* U.S.S.G. § 2B1.1. The PSR calculation reflects the same enhancements and reductions to which the parties agreed in the Plea Agreement. *See* PSR ¶ 22; Plea Agreement at 5. The PSR thus calculates a total offense level of 6. *See* PSR ¶ 30.

The PSR also calculates that based on his past criminal convictions, the defendant falls within Criminal History Category I. The PSR calculation reflects the same Criminal History Category to which the parties agreed in the Plea Agreement. *See* PSR ¶ 34; Plea Agreement at 5. Ultimately, the PSR calculates the same Guidelines range of 0 to 6 months of imprisonment and one to three years of supervised release that the parties calculated in the Plea Agreement, and a fine range of $1,000 to $9,500. *See* PSR ¶ 66. The Government agrees with the calculations specified in the PSR.

III. LEGAL STANDARD

Following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 243–45 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). Under 18 U.S.C. § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining the particular sentence to be imposed, the court shall consider the following factors:

3

(1) "[T]he nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *See Booker*, 543 U.S. at 260–62. The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id.*

This case involves a defendant whose unlawful behavior has continued undeterred despite numerous arrests, culminating in his involvement in a months-long, multi-state shoplifting scheme. In the Government's view, a thorough assessment of the § 3553(a) factors counsels that a sentence at the high end of the PSR's calculated Guidelines range of 0 to 6 months would be just, appropriate, and

4

"sufficient, but not greater than necessary" to satisfy the purposes of the statute.

IV.  DISCUSSION

Applying the relevant factors to this case, the Government submits the following for the Court's consideration.

   A. Seriousness of the Offense

The facts and circumstances surrounding this offense are serious. The criminal network that the defendant was a part of wreaked havoc on various retail stores in Connecticut and the neighboring states. The criminal network is responsible for stealing retail items totaling $111,873.26. Most egregiously, a significant amount of these thefts occurred after the start of the pandemic. The "grab and go" style thefts are particularly brazen during the pandemic because they require store security officers to come into close contact with the thieves in order to prevent them from leaving the store. In addition to this risk, members of the network, on more than one occasion, struck police vehicles and store employees with their car while trying to flee. One member of the network bit a store security officer who was attempting to keep him from fleeing the store. The thefts caused injuries to individuals and property, as well as significant monetary loss to the victim stores. Tisdol took part in at least four of these thefts, with losses totaling approximately $12,010.72. *See* PSR ¶¶ 14–15. The Government respectfully submits that the sentence imposed should reflect the seriousness of the offense.

   B. Respect for the Law

The defendant has a federal weapons case and several very serious charges

pending in state Court. As the defendant wrote in his sentencing memo, "[i]n his other federal case, he possessed a firearm with an obliterated serial number. In state court, he is charged with a plethora of unrelated crimes: interfering/resisting arrest, carrying a pistol without a permit, possession a weapon in a motor vehicle, robbery, kidnapping, and larceny. There is no downplaying the gravity of this." Def. Sent. Memo at 3–4. Indeed, there is no downplaying the gravity of these crimes. His state cases are all still pending. In other words, in a very short time span, Tisdol has been charged with many violent crimes. The types of crimes in addition to the short time period that he committed them or has been accused of committing them, demonstrates a brazenness that accompanies a lack of respect for the law. As this is the defendant's first criminal sentencing, the sentence imposed should demonstrate that *all* criminal laws need to be respected and that there are consequences for violating these laws.

C. Protection of the Public

While larceny and selling stolen goods are not violent offenses, the defendant and his co-conspirators nonetheless inflicted a great deal of harm on the community. The network was a persistent problem for businesses and law enforcement at a time when many stores were already struggling as a result of the pandemic. *See* PSR ¶ 12. In addition, their efforts to evade law enforcement frequently put the public at risk. These thefts took place during business hours in the presence of other patrons. *See* PSR ¶ 13. The Government submits that protecting the public from reckless, unlawful behavior of the sort the defendant engaged in would be supported by a sentence at the high end of the Guidelines

6

range.

 D. History and Characteristics of the Defendant

In considering the defendant's background, the Government notes the lack of factors that would explain his history of unlawful behavior or mitigate his responsibility. Although the absence of his father for most of his life was undoubtedly painful, the defendant was raised by his mother and maternal grandmother in a home where "all his basic needs were met." *See* PSR ¶ 41. He recalls that food and shelter were never an issue and denied being neglected or subjected to any form of abuse. *See* PSR ¶ 41. Although he struggled with behavioral issues as a teenager, it appears that the defendant enjoyed a relatively unremarkable childhood surrounded by adults who cared for him.

The defendant contends that he committed the instant offense to provide for his family, but he fails to put forth any reason why he could not do so lawfully. While the defendant has struggled to maintain the kind of steady employment that would allow him to support his children, he "got into the habit of making money the wrong way." Def. Sent. Memo at 8. The defendant reportedly attended GED classes has been hired to a full-time position in the past. *See* PSR ¶¶ 51–52. Although he reports no specialized skills or certifications, the PSR suggests that his failure to hold a job has largely been attributable to his own behavior. *See* PSR ¶ 52. The defendant's "life was out of control until he was detained." Def. Sent. Memo at 3. The defendant's criminal history and ongoing pattern of destructive choices are inconsistent with his professed desire to be a supportive father to his children and a productive member of society.

E. <u>Restitution</u>

As part of the Plea Agreement, the defendant understood that the Government would seek restitution under 18 U.S.C. § 3663A. Plea Agreement at 2. He has agreed to make restitution in the amount of $111,873.26, subject to apportionment under 18 U.S.C. § 3664(h). The apportioned amount attributable to the defendant is $4,453.56.

V. CONCLUSION

For his own material gain, the defendant participated in a criminal conspiracy that caused substantial financial losses and threatened the safety of the public. Further, there is little to suggest that he appreciates the extent of the harm he has inflicted or that he is committed to becoming a law-abiding citizen. Considering the nature of his offense and the other factors outlined in § 3553(a), a sentence at the high end of the Guidelines would be sufficient, but not greater than necessary, to achieve the objectives of federal sentencing.

Respectfully submitted,

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

*/s/ Brendan Keefe*
BRENDAN KEEFE
ASSISTANT U.S. ATTORNEY
United States Attorney's Office
450 Main Street, Room 328
Hartford, CT 06103
Brendan.keefe@usdoj.gov
(860) 947-1101
Federal Bar No. ct28689

## **C E R T I F I C A T I O N**

I hereby certify that on September 3, 2021, the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/Brendan Keefe*
**BRENDAN KEEFE**
**ASSISTANT UNITED STATES ATTORNEY**